IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| THOMAS T. IVEY, | ) | |
| | ) | C/A No. 0:07-04024-GRA-BM |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| JON OZMINT, COMMISSIONER, | ) | **(Death Penalty Case)** |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

This is a Petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The Petitioner is currently confined by the South Carolina Department of Corrections under a sentence of death for the murder of Robert Montgomery.[1]  The Petition was filed on December 14, 2007.

**Procedural History**

The Petitioner was indicted in the April 1994 term of the Orangeburg County Court of General Sessions for kidnapping [Indictment No. 94-GS-38-667], armed robbery [Indictment No. 94-GS-38-664], and the murder of Robert Montgomery  [Indictment No. 93-GS-38-819]. (Volume

---

[1]Petitioner has also been convicted and sentenced to death in a separate proceeding for the murder of Thomas Harrison.  State v. Ivey, 481 U.S. 125 (S.C. 1997).  The United States Supreme Court has denied Petitioner's writ of certiorari in that case.  Ivey v. Maynard, 537 U.S. 952 (2002).

1



5, pp. 2330-2335). The Solicitor[2] served timely notice of intent to seek the death penalty. (Volume 5, p. 2366). Petitioner was represented at trial by Doyet "Jack" Early, Esquire, and Michael Culler, Esquire. Following a jury trial, Petitioner was convicted of murder on July 14, 1995. (Volume 1, p. 1 - Volume 4, p. 1514). At the conclusion of the sentencing phase of the bifurcated death penalty trial, the jury returned a recommendation of death on the murder charge. (Volume 4, p. 1515-Volume 5, pp. 2201, 2372, 2374-2375). The Honorable Charles W. Whetstone, South Carolina Circuit Judge, sentenced the Petitioner to thirty (30) years for kidnapping, with that sentence to be subsumed in regard to the murder conviction pursuant to S.C.Code Ann. § 16-3-20 and § 16-3-910, thirty (30) years for armed robbery, and death on the murder charge. (Volume 5, pp. 2201-2203, 2367-2368, 2373).

Petitioner filed a timely Notice of Intent to Appeal to the South Carolina Supreme Court, and an appeal was perfected by Joseph L. Savitz, III, Esquire, of the South Carolina Office of Appellate Defense. Petitioner raised the following issues in his direct appeal:

> 1. The judge erred by qualifying prospective juror Kawiana Young, whose commitment to the death penalty prevented or substantially impaired the performance of her duties as a juror in accordance with her instructions and oath. This error violated the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 3 and 14, of the South Carolina Constitution.

> 2. The judge erred in refusing to allow defense counsel to voir dire juror Kawiana Young concerning her relationship to "Fletch", the accessory before the fact of Montgomery's murder who supplied Vincent Neumon [Petitioner's co-defendant] with the gun used to kill Montgomery and Harrison. This error violated the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 3 and 14, of the South Carolina Constitution.

---

[2]In South Carolina, local prosecutors are called "solicitors" or "assistant solicitors." See § 24 of Article V of the Constitution of the State of South Carolina and S.C. Code Ann. § 1-7-310.



3. The court erred by declaring Vincent Neumon a court's witness at sentencing and then allowing the state to read portions of Neumon's testimony from the Harrison trial to the jury. This ruling resulted in the judge effectively vouching for the importance of Neumon's prior testimony in a situation where the testimony was not necessary to prevent a likely miscarriage of justice.

4. The judge erred by refusing to allow appellant to tell the jury at sentencing that he was already under a death sentence for the Harrison murder, where the solicitor argued future dangerousness. This violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, § 3, of the South Carolina Constitution.

5. The judge erred by refusing to allow defense counsel to argue at sentencing the Biblical concept of mercy as a reason for sparing appellant's life. This error violated the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 14, of the South Carolina Constitution.

Final Brief of Appellant, p. v - vi.

On June 15, 1998, the South Carolina Supreme Court entered its opinion affirming the Petitioner's convictions and sentences.  State v. Ivey, 502 S.E.2d 92 (S.C. 1998).  On July 20, 1998, the South Carolina Supreme Court denied Petitioner's petition for rehearing.

Petitioner then filed a petition for certiorari in the United States Supreme Court,[3] in which he raised the following issue:

Has the South Carolina Supreme Court misinterpreted and is it misapplying Wainwright v. Witt, 469 U.S. 412 (1985)?

On January 11, 1999, the United States Supreme Court denied certiorari.  Ivey v. South Carolina, 525 U.S. 1075 (1999).

Petitioner then filed an application for post-conviction relief (APCR) on March 21,

---

[3]A copy of this document is not contained in the record provided to this Court.



2000. Petitioner was represented by H. Wayne Floyd, Esquire, and Melissa J. Reed Kimbrough,

Esquire, and raised the following issues:

9(a) Applicant was denied due process of law by the state's failure to personally serve him with notice of its amended evidence in aggravation in violation of S.C. statutory and constitutional law, and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

10(a) Applicant was never personally served with notice of the state's evidence in aggravation. The state's failure to provide such notice was deficient under the United States and South Carolina Constitutions, and entitles Applicant to a new sentencing trial.

9(b) Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that counsel failed to request a jury charge pursuant to State v. Atkins, 293 S.C. 294, 360 S.E.2d 302, 305 (1987). Strickland v. Washington, 466 U.S. 668 (1984).

10(b) Because Applicant would have been parole ineligible had he been sentenced to life, he was entitled to a plain and ordinary meaning charge under State v. Atkins. Counsel never requested such a charge, and none was given. Counsel's failure to request this charge was deficient, Southerland v. State, Op. No. 25034 (filed December 13, 1999), and applicant was prejudiced. Counsel's dereliction entitles him to a new sentencing hearing. Id.

9(c) Applicant's right to due process of law and equal protection were denied him by the trial judge's failure to provide a plain and ordinary meaning charge pursuant to State v. Atkins. U.S. Const. amend., XIV, V.

10(c) Applicant was entitled to a plain and ordinary meaning charge and the court's failure to provide it deprived him of due process of law and equal protection. Southerland v. State, Op. No. 25034 (filed December 13, 1999).

9(d) Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that counsel failed to object to testimony concerning applicant's alleged drug use, which was improper pursuant to State v. Smith, 309 S.C. 442, 424 S.E.2d 496 (1992). This evidence was irrelevant to the case, and extremely prejudicial, and counsel's failure to object to it was ineffective. Strickland v. Washington, supra.

10(d) During the guilt phase of applicant's trial, state's witness Victor Neumon

4



testified he and Applicant "went to rouse some drug dealers" after the murder. (ROA at 1416). Other than Neumon's testimony, given pursuant to a life sentence plea deal, there was absolutely no evidence drugs were connected with the murder of Robert Montgomery. Despite the irrelevance of this evidence, it was extremely prejudicial and served no purpose other than to inject a prejudicial and arbitrary factor into the trial court proceedings. Trial counsel's failure to object to this evidence was prejudicial, and entitles applicant to a new trial.

9(e) Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that counsel failed to place state's witness Victor Neumon on the witness stand for purposes of having him invoke his Fifth Amendment rights. Strickland v. Washington, supra.

10(e) During applicant's penalty phase trial, the state's main witness, Victor Neumon, refused to honor his obligation under the state's plea agreement, invoked his right to silence under the Fifth Amendment, and refused to testify. (ROA at 1810). All of this was done in an in camera setting. Despite the fact that Neumon's actions dramatically called into question his credibility and the integrity of his prior testimony - - which was subsequently read into the record - trial counsel failed to call Neumon to the stand for purposes of having him invoke his right to silence in front of the jury. Their failure to do so served no legitimate strategic purpose, constituted ineffective assistance of counsel, and entitles applicant to a new trial.

9(f) Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that counsel failed to fully explore and exploit considerations given to state's witness Vincent Neumon in exchange for his testimony. Strickland v. Washington, supra.

10(f) The only information concerning Vincent Neumon's plea deal was that he would receive a life sentence in exchange for his cooperation with and testimony for the state. Defense counsel failed to explore all of the details and ramifications of all the considerations given to Neumon in exchange for his testimony. Counsel's failure to do so was professionally unreasonable, prejudiced the outcome of applicant's trial and sentencing, and entitles applicant to a retrial and new sentencing.

9(g) Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that appellate counsel failed to raise the issue of the state's use of autopsy photographs during the guilt phase, when such photographs were irrelevant to the issue of guilt, and, thus, inadmissible. Strickland v. Washington, supra; State v. Patrick, 289 S.C. 301, 309, 345 S.E.2d 481, 485 (1986).

5



10(g) During the state's case-in-chief, bloody autopsy photographs were admitted into evidence over defense counsel's objection. (ROA at 1295-1296, 1309). Because the state presented uncontested testimony as to the gun powder residue and bullet holes found on the victim's clothing, autopsy photographs depicting this same evidence were unnecessary, and merely served to inflame the jury, and deprive Applicant of a fair trial. Because an appropriate objection was made during trial, appellate counsel was ineffective in failing to raise this meritorious issue on direct appeal. Appellate counsel's ineffective representation entitles Applicant to a new trial.

9(h) Applicant was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law in that appellate counsel failed to raise the issue of the trial court's erroneous qualifications of jurors Jones and Rambo, both of whom trial counsel sought to strike on the basis of their voir dire responses indicating they would automatically vote in favor of a death sentence for anyone found guilty of murder in violation of due process and <u>Morgan v. Illinois</u>, 504 U.S. 719 (1992). <u>Strickland v. Washington</u>, supra.

10(h) During their voir dire examinations, both jurors Rambo and Jones indicated they would always be in favor of the death penalty in cases of murder. (ROA at **). The state then rehabilitated these jurors. However, based on their initial responses, trial counsel sought to exclude these jurors for cause. The trial court denied counsel's motion. Appellate counsel failed to raise this issue on direct appeal. Because the trial court's ruling on this issue was erroneous, appellate counsel erred in failing to raise this issue on direct appeal, and applicant is entitled to a new trial.

(Volume 5, pp. 2377-2383).

On December 18, 2001, the Petitioner filed an amend application and raised an additional claim,

as follows:

9(i)   Applicant was denied the effective assistance of counsel guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and South Carolina law because one of his trial counsels had a conflict of interest, in that he knew the victim and had described him as a "personal friend". <u>Cuyler v. Sullivan</u>; <u>Strickland v. Washington</u>, <u>supra</u>.

10(i) Prior to applicant's trial, one of his counsel was appointed to represent a co-defendant Patricia Perkins on charges stemming from her involvement in the forgery of checks, which ultimately led to the shooting death of Officer Thomas Harrison. After his appointment, counsel moved to be relieved, and sent a letter to the Clerk's office noting that he had been a "personal friend" to Thomas Harrison. Counsel was

6



> thereafter relieved from his appointment. Subsequently, and after applicant had been convicted of murdering Thomas Harrison, the same attorney was appointed to represent applicant on murder charges stemming from the shooting death of Robert Montgomery. Counsel failed to inform the court of his prior relationship with the victim. Thus, the court was unaware of the conflict, and applicant was deprived of the conflict free counsel to which he was entitled. Applicant is entitled to a new trial on this ground.

(Volume 5, p. 2449).

An evidentiary hearing was held on Petitioner's APCR on March 18-19, 2002, at which Petitioner was represented by Floyd and Kimbrough. (Volume 5, p. 2492 - Volume 6, p. 2629). At the conclusion of this hearing, the record was left open pending further proceedings. (Volume 6, pp. 2625-2628). The PCR judge also issued an order relating to whether testimony of the trial judge could be required; (Volume 6, pp. 2630-2632); from which an appeal was taken. (Volume 6, pp. 2633-2634). On April 28, 2003, the South Carolina Supreme Court issued an opinion holding that the Petitioner was not entitled to question the former judge and quashing the subpoena that had been issued. Ex Parte: Charles Whetstone, Jr. Appellant, In re: Thomas Ivey vs. William D. Catoe, 580 S.E.2d 447 (S.C. 2003) (Volume 6, pp. 2642-2647). Rehearing was denied on May 29, 2004.

In January 2005,[4] counsel for the Petitioner filed a second amended application raising and restating his claims as follows:

> 9(a) Applicant was deprived of due process of law and his right to counsel under the Fifth and Sixth Amendments to the United States Constitution, the South Carolina Constitution and laws due to trial counsel's conflict of interest. Cuyler v. Sullivan, 466 U.S. 335 (1980); Holloway v. Arkansas, Walker v. United States, 422 F.2d 374 (3rd Cir. 1970); Glasser v. United States, 315 U.S. 60 (1963); Thomas v. State, 346

---

[4]Although the parties do not appear to dispute the dates on this amended APCR, the copy in the record only states "Jan. _____, 2005" on the signature page. (Volume 6, p. 2655). The filing date on the copy submitted is illegible. (Volume 6, p. 2648).



S.C. 140, 551 S.E.2d 254 (2001).

10(a) Trial counsel's conflict of interest arose due to an admitted "close personal" friendship with Thomas Harrison, the murder victim for whom Applicant was convicted and sentenced to death. This conflict was never disclosed to Applicant. The only disclosure concerning this conflict was in a letter to the Clerk of Court for Orangeburg County, in which counsel Culler asked to be relieved of his appointment to represent codefendant Patricia Perkins due to his "close personal friend[ship]" with Harrison, whose death occurred in connection with the charges Perkins faced for check forgery. At the time of this admission and request to be relieved, the Honorable Judge Charles Whetstone was the Chief Administrative Judge in Orangeburg County, whose duties included determining when an attorney should be relieved as counsel. It is unclear whether counsel's letter was made available for Judge Whetstone's consideration. Arguably, Culler's letter to the Court placed Judge Whetstone on notice of the conflict. However, it is certainly possible that Judge Whetstone relied on a member of his staff in handling matters related to the appointment and relief of indigent criminal appointments. However, if Judge Whetstone were made aware of this conflict, his later appointment of Culler to Applicant's murder case was clearly in error under the principle set forth in Holloway. Holloway requires the trial court, upon notice, to inquire into potential conflicts of interest. Alternatively, if Judge Whetstone were not on notice of the conflict, then trial counsel Culler was in error for failing to advise the Court of the conflict. Cuyler; Walker; Glasser; and Thomas, supra.

9(b) Applicant was denied a fair sentencing proceeding and the effective assistance of counsel, in violation of his rights to due process of law, a fair trial and the effective assistance of counsel, the Fifth, Sixth and Eighth Amendments to the United States Constitution, and Strickland v. Washington, 466 U.S. 688 (1984), due to defense counsel's failure to request an instruction that life and death are to be given their "plain and ordinary" meaning pursuant to State v. Atkins, and Southerland v. State, 337 S.C. 610, 524 S.E.2d 833 (1999). This error is reversible per se under South Carolina law.

10(b) Applicant was entitled to a plain and ordinary meaning charge. The South Carolina Supreme Court has held a capital defendant is entitled to this charge even when a no parole charge has also been given. The plain and ordinary meaning charge is separate and distinct from a parole ineligibility charge, and failure to provide a plain and ordinary meaning charge is reversible error. Southerland v. State, supra. Applicant's counsel was derelict in failing to request a plain and ordinary meaning charge, and this error requires reversal of Applicant's death sentence. Strickland v. Washington, supra.

9(c) Applicant was denied the effective assistance of appellate counsel. The trial court erroneously admitted prior testimony of co-defendant Vincent Neumon after

8



Neumon refused to testify during Applicant's trial. Applicant's trial counsel objected to the admission of this evidence at trial, thus preserving this issue for appellate review: however, appellate counsel failed to raise this issue on direct appeal. Appellate counsel's failure to raise this issue was deficient, and denied Applicant a fair trial. Crawford v. Washington, ____U.S. ____, 124 S.Ct. 1354 (2004); Ohio v. Roberts, 448 U.S. 56 (1980); Riddle v. State, 314 S.C. 1 (1994), Strickland v. Washington, supra.

10(c) Vincent Neumon testified during the first of Applicant's two capital trials. Neumon was later called as a witness during the guilt-or-innocence phase of Applicant's second trial, for which the instant appeal was filed. Neumon refused to testify during the penalty phase of Applicant's second trial. Over trial counsel's strenuous and repeated objection, the Court declared Neumon a Court's witness and allowed the solicitor to read into the record portions of Neumon's prior testimony concerning the murder of Thomas Harrison. Applicant's trial counsel had no opportunity to cross-examine Neumon, who was the State's primary witness as to the facts of the murders for which Applicant was charged, convicted and sentenced to death. The Court's admission of Neumon's testimony into evidence was a clear violation of Applicant's rights under the confrontation clause and state law. A new sentencing proceeding should be granted on this basis.

9(d) Applicant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Strickland v. Washington, supra, because the full extent of the consideration given to Vincent Neumon were not fully explored on cross-examination, or, in the alternative, the state violated its obligation to fully disclose the extent of the plea agreement in violation of Brady v. Maryland, and Rule 5, SCCRIMP.

10(d) Upon information and belief, Applicant believes that his co-defendant and state's witness Victor Neumon received additional privileges and consideration in exchange for his trial testimony. The failure to bring these additional considerations to the jury's attention was either due to deficient investigation on the part of trial counsel, or the state's failure to reveal this information as required under Brady and Rule 5, SCCrimP. This information was critical as evidence tending to show Neumon's motivation to testify against Applicant. Neumon's testimony was critical to the state's case in both the guilt-or-innocense phase and the penalty phase. Moreover, Neumon refused to take the witness stand during the penalty phase, and his prior testimony concerning the murder of Thomas Harrison was admitted over objection, and without the benefit of cross-examination. Applicant's conviction and sentence should be reversed.

9(e) Applicant was denied the effective assistance of counsel due to appellate counsel's failure to raise on direct appeal the erroneous admission of bloody autopsy photographs during the guilt-or-innocense phase of his trial in violation of the Sixth



Amendment to the Unite States Constitution and <u>Strickland v. Washington</u>, <u>supra</u>. Trial counsel made a proper objection to this evidence, thus preserving this issue for appeal. This error should have been raised by appellate counsel, and failure to do so was deficient, and requires reversal of Applicant's conviction.

10(e) Applicant's trial counsel properly preserved the issue of the improper admission of autopsy photographs during the guilt-or-innocence phase of Applicant's trial. The admission of these photographs was unnecessary, as the defense did not contest the pathologist's testimony, nor present an alternative view of the facts related to Mr. Montgomery's death. Admission of autopsy photographs during the guilt-or-innocence phase was improper, the evidence was irrelevant yet extremely prejudicial, and denied Applicant a fair trial. Applicant's conviction should be reversed.

9(f) Applicant was denied the effective assistance of appellate counsel when the trial judge erroneously qualified juror Kawiana Young whose predisposition to automatically impose the death penalty for anyone first convicted of murder prevented her from being properly qualified under <u>Morgan v. Illinois</u>, 504 U.S. 719 (1992); <u>Strickland v. Washington</u>, <u>supra</u>.

10(f) Applicant was denied a fair trial by the qualification of Kawiana Young who expressed a clear and unequivocal willingness to impose death on any defendant convicted of murder. This pro-death position materially impaired her ability to serve as a sentencing juror in Applicant's trial, and deprived him of a fair sentencing proceeding. Trial Counsel objected to her qualification. The trial court overruled this objection. The State sought to rehabilitate Juror Young, and eventually she redefined her position as the type of juror who would want to hear everything in the sentencing phase before arriving at a penalty choice. Nonetheless, Juror Young's initial responses to the trial court clearly demonstrated that she would vote death for anyone convicted of murder. The trial court thus erred in qualifying Juror Young, and appellate counsel was derelict in not raising this issue on appeal.

(Volume 6, pp. 2649-2654).

The evidentiary hearing was thereafter re-convened in Orangeburg County on January 10, 2005. (Volume 6, pp. 2656-2719). Following the conclusion of the hearing, the PCR judge issued a written order on April 4, 2006 denying the Petition in its entirety. (Volume 6, pp.



2781-2847).[5]

On January 26, 2007, the Petitioner filed a petition for writ of certiorari.  Petitioner

continued to be represented by Floyd and Kimbrough, and raised the following issues in his Petition:

> 1. Whether the lower court erred in finding that attorney Michael Culler did not have a personal conflict of interest in representing Petitioner?
>
> 2. Whether the lower court erred in finding counsel effective when they failed to request a plain and ordinary meaning charge?
>
> 3. Whether the lower court erred in finding counsel effective when they failed to call co-defendant Vincent Neuman to the stand for the purposes of having him invoke his rights under the Fifth Amendment in front of Petitioner's jury?
>
> 4. Whether the lower court erred in finding appellate counsel effective when counsel's failure to raise the issue of the trial court's erroneous admission over objection of co-defendant Vincent Neumon's testimony was reversible error under Ohio v. Roberts, 448 U.S. 56 (1980) and/or whether Crawford v. Washington should be applied retroactively and entitles Petitioner to relief based on the admission of prior testimony of Vincent Neumon that was not subject to cross-examination and confrontation?
>
> 5. Whether the lower court erred in finding appellate counsel effective despite his failure to brief the issue of juror Ramsey's erroneous qualification?

See Petition for Writ of Certiorari, p. 1-2.

On October 17, 2007, the South Carolina Supreme Court entered a letter order denying the Petition

for Writ of Certiorari.  Ivey v. State, (Order filed Oct. 17, 2007).  The remittitur was sent down on

November 2, 2007.[6]

––––––––––––––––––––

[5]The pages of the Order of Dismissal are out of order in the record.  Pages 1-5 of the Order are in the record on pages 2781-2785.  Pages 6-31 are set out in the record on pages 2791-2816.  Pages 32-36 are set out in the record on pages 2786-2790.  Pages 37-67 are set out in the record on pages 2817-2847.

[6]Following the decision of the South Carolina Supreme Court, the Petitioner had until January 15, 2008 (ninety days from the denial of state PCR certiorari) to seek certiorari in the United States Supreme Court. There is no record of Petitioner having done so.

11



On December 14, 2007, Petitioner filed this Petition for writ of Habeas Corpus in United States District Court under 28 U.S.C. § 2254.  On that same date, Petitioner also filed a motion for stay of execution and for appointment of counsel.  Petitioner raises the following issues in his Petition:

> I. Petitioner's convictions and sentence of death violate the Sixth and Fourteenth Amendments to the United States Constitution because juror Kawiana Young was improperly seated as a juror.
>
> II. Petitioner's convictions and sentence of death violate the Sixth and Fourteenth Amendments to the United States Constitution because defense counsel had an actual conflict of interest.
>
> III. Petitioner's conviction and sentence of death violate the Sixth and Fourteenth Amendments to the United States Constitution because [appellate] counsel[7] failed to challenge a Confrontation Clause violation at trial.

See Petition, pp. 4-12.[8]

On December 18, 2007, the Honorable G. Ross Anderson, Jr., United States District Judge, granted Petitioner's motion for a stay, and appointed Robert E. Lominack, Esquire, and William Harry Ehlies, Esquire,  as co-counsel for the Petitioner. Respondent was granted thirty (30) days from the date of that order in which to file an answer. See Order filed December 18, 2007. The Respondent has now filed a response and motion for summary judgment, arguing that the Petition is without merit and should be dismissed. See Habeas Corpus Rules 5-7, 11. Briefing by the parties has been completed, and the Petition and Respondent's motion are now before the Court for

---

[7]Ground three of the Petition actually says "defense" counsel, but Respondent does not dispute that Petitioner's claim relates to his appellate counsel, not his trial counsel.

[8]Petitioner initially also raised a Fourth Ground in his petition. See Petition, pp. 12-15. However, in his response in opposition to summary judgment, Petitioner has notified the Court that he is no longer pursuing that issue.  See Petitioner's Reply to Respondents' Return and Motion for Summary Judgment, p. 1, n. 1.

12



disposition.  As this is a dispositive motion, this Report and Recommendation is entered for review

by the Court.[9]

### Discussion

The underlying facts concerning this case were summarized by the South Carolina

Supreme Court in its decision of June 15, 1998, as follows:

> In early January 1993, [Petitioner] and Vincent Neumon escaped from a prison in
> Alabama. [Petitioner] and Neumon stole a truck and drove to Columbia, South
> Carolina, Neumon's hometown.
>
> Neumon testified during the guilt phase of [Petitioner's] trial.   According to
> Neumon's testimony, on the evening of January 13, 1993, [Petitioner] suggested the
> two men should rob some people. [Petitioner] carried a pistol in his coat pocket while
> the two men walked through Columbia.  They stopped at Owens Steel.  A maroon
> Suburban was parked outside.  Mr. Montgomery [the deceased] came out of Owens
> Steel.  At gunpoint, [Petitioner] led Montgomery back into the building to obtain the
> keys to the vehicle.   When they returned, Neumon drove the vehicle, Mr.
> Montgomery sat beside him, and [Petitioner] sat in the back.  Mr. Montgomery was
> scared and begged the two men not to hurt him; he stated he had a young child at
> home and his wife was expecting another child.  Neumon and [Petitioner] assured
> Mr. Montgomery he would not be hurt.
>
> Neumon drove to North, South Carolina.  At that point, [Petitioner] stated "this is far
> enough." Neumon stopped the vehicle. [Petitioner] told Mr. Montgomery to get out
> of the vehicle.  Neumon remained in the vehicle. [Petitioner] and Mr. Montgomery
> walked away.  Neumon testified he saw the "flame" flash from the gun twice.
> [Petitioner] returned to the vehicle with the pistol in his hand. [Petitioner] later told
> Neumon when he shot Mr. Montgomery in the back of the head his hair "jumped
> up".  [Petitioner] then rolled Mr. Montgomery over and shot him in the chest.

State v. Ivey, 502 S.E.2d at 93.

### I.

Respondent  initially  contended  that  the  Petition  should  be  dismissed  because

---

[9]This case was automatically referred to the undersigned United States Magistrate Judge
for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and
Local Rule 73.02(B)(2)(c), D.S.C.



Petitioner failed to file his application for a writ of habeas corpus in federal court within one (1) year following the finality of his convictions. However, on December 28, 2007, the Respondent filed a Supplemental Return abandoning the Statute of Limitations defense asserted in the earlier Return. See Court Docket No. 23 [Amended Motion]; see also Petitioner's Reply Brief, n. 1. Therefore, this issue is no longer before the Court and has not been addressed.

## II.

In Ground One of his Petition, Petitioner contends that the trial judge erred in qualifying Kawiana Young to serve as a juror. This claim was raised in Petitioner's direct appeal.[10] The South Carolina Supreme Court summarily rejected the Petitioner's argument in its opinion, citing State v. Atkins, 399 S.E.2d 760 (1990), cert. denied, 501 U.S. 1259 (1991). State v. Atkins held that "[t]he determination of whether a juror is qualified to serve on a death penalty case is within the sole discretion of the trial judge and is not reversible on appeal unless wholly unsupported by the evidence". State v. Atkins, 399 S.E.2d at 765, citing State v. Plemmons, 332 S.E. 2d 765 (S.C. 1985), vacated on other grounds, 476 U.S. 1102 (1986).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d at 311-312 (4th Cir. 2000) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct.

---

[10]In his PCR proceedings, Petitioner argued that his appellate counsel was ineffective for failing to raise this issue in his direct appeal. However, as noted hereinabove, Petitioner's appellate counsel did raise this issue and it was summarily dismissed by the South Carolina Supreme Court. This fact was noted by the PCR judge, although he also discussed the issue on the merits. See (Volume 6, pp. 2771-2778). In any event, Petitioner does not raise this issue as an ineffective assistance of counsel claim in his habeas petition.

14



74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001). Since Petitioner's claim was adjudicated on the merits by the South Carolina state court, this Court's review is also limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000); Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's claim.

In this case, Petitioner contends that Juror Young was predisposed to impose the death penalty once someone was convicted of murder. At trial, Petitioner's counsel objected and moved to disqualify Young based on her responses to voir dire. (Volume 2, pp. 857-858). However, the trial judge denied the motion to disqualify Young, finding that she was qualified "given the totality of her responses." (Volume 2, p. 858). The State Supreme Court upheld this ruling, and the undersigned can find no reversible error in this decision.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall

15



enjoy the right to...an impartial jury"; U.S.Const.Amend. VI; a right that is applicable to the states through the Fourteenth Amendment. See Irvin v. Dowd, 366 U.S. 717, 722 (1961); Conner v. Polk, 407 F.3d 198, 205 (4th Cir. 2005); Smith v. Phillips, 455 U.S. 209, 217 (1982) [An accused has a constitutional right to "a jury capable and willing to decide the case solely on the evidence before it."]; In Re Murchison, 349 U.S. 133, 136 (1955)["A fair trial in a fair tribunal is a basic requirement of due process."]  Further, during qualification of a capital jury (as was the case here), the trial court may exclude a potential juror based upon his or her personal views on capital punishment if "the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright, 469 U.S. at 424.

The record reflects that when Young was initially asked,"So, in every instance where someone is convicted of murder, you'd always vote for the death penalty?", Young responded "Yes."  (Volume 2, pp. 843-844).  However, when the court asked further questions after she said she'd never vote for a life sentence, she began to qualify her remarks:

Q. And there's nothing that's going to make you change your mind?

A. I'd have to hear the sides, both sides.

Q. Okay. Well, that's what I want to know. Can you listen to both sides?

A. Uh huh.

Q. — and decide on life or death —

A. Yes.

(Volume 2, p. 844).

Further, while Young acknowledged that she had a "strong belief on the death penalty"; (Volume 2, p. 844); she also stated that she could vote for a life sentence depending on the circumstances of

16



the case. (Volume 2, p. 845). Young also testified that she could keep an open mind and listen to all

the evidence before deciding on a sentence. (Volume 2, pp. 845-846).

Similarly, when the Solicitor made his first inquiry of this juror, she responded as

follows:

> Q. Would you have your mind made up a hundred per cent for the death penalty before you even got to that second phase?
>
> A. Yeah.
>
> Q. Okay. And without going into what those circumstances might be, are there some circumstances that you could visualize where you would bring back a life sentence instead of the death penalty?
>
> A. Yeah.
>
> Q. So you would keep an open mind and would listen to that testimony and would listen to what the judge told you at the end of that case?
>
> A. Yes.
>
> Q. And would you listen to the other jurors, if you were deliberating and trying to decide between life and death?
>
> A. Yes.

(Volume 2, pp. 849-850).

In her colloquy with defense counsel, she again stated in response to an open ended

question:

> A. ... Like you said, I have to listen to both sides of the, of the story, and, but I, in a way, I think murder, that's kind of harsh. And I was, have a strong belief in the death penalty.

(Volume 2, pp. 851-852).

Young was then was asked whether "in the vast majority of murder cases you think that defendant

would deserve the death penalty", to which she responded "Yeah. I think so." (Volume 1, p. 852).



17

However, when she was given the "three types of juror" form to review and to tell them "which one most closely fits what you think about yourself", she responded,

> A.  Well, I'll have to go with the third one.
>
> Q. The third one?
>
> A. Yeah.
>
> Q. Okay, and that third type juror is a juror that would keep an open mind, and even though you're dealing with a convicted murderer if you get to that point, you could consider life in prison and you could consider imposing the death penalty?
>
> A.  Yeah, it would be a fifty-fifty, like I said, you have to listen to both sides.

(Volume 2, p. 855).

Young also testified that she could impose life in prison or the death penalty, depending on what she heard.  (Volume 2, pp. 855-856).  The trial judge then denied defense counsel's motion to disqualify her, stating that Young was "a qualified juror, given the totality of her responses. She's clearly qualified to serve." (Volume 2, p. 858).

"The trial judge's determination of a jury's impartiality is a finding of fact subject to deference in federal habeas corpus absent clear and convincing evidence otherwise." Montgomery v. Bagley, 482 F.Supp.2d 919, 948 (N.D.Ohio 2007)(citing Patton v. Yount, 467 U.S. 1025, 1031 (1984)); Maynard v. Dixon, 943 F.2d 407, 415 (4th Cir.1991) [When juror responses are less than clear, "the determination made by the trial court, based on its eyeing the juror, is presumed to be consistent with the applicable standard."] Additionally, as previously noted, "[t]he requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)...provide additional, and binding, directions to accord deference.  The provisions of that statute create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set

18



aside state-court rulings." <u>Uttecht v. Brown</u>, 127 S.Ct. 2218, 2224 (2007) (citing 28 U.S.C. §§ 2254(d)(1)-(2)); <u>Williams v. Taylor</u>, 529 U.S. at 413; <u>Evans</u>, 220 F.3d at 311-312.

   Here, the trial judge was able to observe  Young's demeanor and question her specifically on this issue, and after observing and questioning her, he then found that based on the totality of her responses  she was qualified to serve. Based upon a review of the relevant facts, testimony and caselaw, the undersigned does not find that Petitioner has shown that the state court findings on this issue are unreasonable. <u>Evans</u>, 220 F.3d at 312;  <u>Uttecht</u>, 127 S.Ct. at 2223 [ "The judgment as to 'whether a veniremen is biased . . . is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.  Such determinations [are] entitled to deference even on direct review; the respect paid such findings in a habeas proceeding certainly should be no less.'"] (quoting <u>Wainwright</u>, 469 U.S. at 428).  This finding is accorded a presumption of correctness and the Petitioner has not provided clear and convincing evidence to overcome this presumption. <u>Uttecht</u>, 127 S.Ct. at 2224 [ "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors."] (citing <u>Wainwright</u>, 469 U.S. at 428); <u>Maynard</u>, 943 F.2d at 415 "[T]he question of juror bias is to be resolved by the trial judge's assessment of demeanor and credibility, and ... such assessments are to be accorded a presumption of correctness under 28 U.S.C. § 2254(d)..."].  Therefore, this issue is without merit and should be dismissed.

### III.

   In Ground Two of his Petition, Petitioner contends that his court appointed counsel, Orangeburg County Public Defender Michael Culler, had a conflict of interest. Specifically, the



record reflects that prior to his appointment to represent Petitioner on the charge that he [Petitioner]

had murdered Robert Montgomery, Culler had written a letter to the Clerk of Court on January 20,

1993 in which he declined representation of  Patricia Perkins on an accessory to forgery charge.

Perkins had been with the Petitioner during the murder of Thomas Harrison. Culler wrote:

> This letter is to inform you of a conflict of interest involving my representation of the referenced individual on the warrant pending against her for forgery. Officer Tom Harrison, who was killed in this incident, was a personal friend.

> Accordingly, please have your staff appoint a new lawyer to represent Ms. Perkins on this charge as set out above.

(Volume 5, p. 2442; Volume 6, p. 2534).[11]

This issue was raised in Petitioner's PCR proceedings, where Petitioner had the

burden of proving the allegations in his petition.  <u>Butler v. State</u>, 334 S.E.2d 813, 184 (S.C. 1985),

<u>cert</u>. <u>denied</u>, 474 U.S. 1094 (1986).  Following the hearing on Petitioner's PCR petition, the PCR

Court made relevant findings of fact and conclusions of law on this issue in accordance with S.C.

Code Ann. § 17-27-80 (1976), as amended, as follows: (1) that there was no actual conflict of

interest which disqualified Michael Culler from acting as counsel for the Petitioner; 2) that the

testimony of co-counsel Early was both probative and relevant; 3) that Early stated that he was not

aware of any relationship between Culler and Thomas Harrison; 4) that Early never had any

discussions with Culler about the existence of any relationship with the Harrisons or about the

earlier letter Culler had written in the Perkins case; 5) that Early stated that Culler never indicated

that he was a personal friend of Harrison; 6) that in Early's eyes, Culler never acted less than zealous

---

[11]Another member of Culler's office, Patricia Tolliver, was appointed to represent Perkins on the forgery charge.  (Volume 6, pp. 2519-2522).  Tolliver testified at the PCR hearing that she also knew Officer Harrison but did not ask to be relieved. She stated that she knew a lot of officers in Orangeburg, but was not close to Harrison. (Volume 6, p. 2521).



in Petitioner's defense and he appeared to be absolutely interested in saving Petitioner's life based upon his diligent work in the case; 7) that in Early's view, everything he asked Culler to do he did and Culler did things on his own and he couldn't recall anything that Culler did that was not in the best interest of his client; 8) that no conflict of interest existed; 9) that as stated by Culler during the PCR proceedings, he had no personal relationship with Officer Harrison, he never socialized with him or his family, and he never had personal discussions with him; 10) that although the January 20, 1993 letter was written, in hindsight Culler does not know why the letter was phrased in the manner it was because it was not accurate in fact; 11) that co-counsel Early credibly testified that Culler was zealous in his defense of Petitioner; 12) that Petitioner failed in his burden of proof under <u>Cuyler</u> and <u>Mickens</u>[12] to show the existence of an actual conflict of interest that adversely affected counsel's performance; 13) that instead, what was shown was the existence of an inaccurate letter that did not reveal the truth; 14) that Harrison had no relationship with Culler, professionally, socially or otherwise; and 15) that the allegation was without merit. (Volume 6, pp. 2808-2809).

As previously discussed, substantial deference is to be given to the state court's findings of fact. <u>Evans</u>, 220 F.3d at 311-312; <u>Bell v. Jarvis</u>, <u>supra</u>**;** 28 U.S.C. § 2254(e)(1). <u>See</u> <u>also</u> <u>Fisher</u>, 215 F.3d at 446; <u>Frye</u>, 235 F.3d at 900. The undersigned can find no reversible error by the state court under this standard. Based upon the evidence in the record, it is uncontested that Culler wrote a letter on January 20, 1993 concerning his appointment in the Patricia Perkins matter requesting to be relieved from that appointment because "Officer Tom Harrison, who was killed in [the] incident, was a personal friend"; (Volume 5, p. 2442); and that Ms. Tolliver, who took over the representation of Ms. Perkins, testified that Culler had told her in passing that he was going to

---

[12]<u>Mickens v. Taylor</u>, 535 U.S. 162 (2002).



ask to be relieved from representing Perkins because he knew Harrison.  (Volume 6, p. 2522). However, contrary to the language in his letter and his alleged comments to Tolliver in 1993, Culler testified under oath at the state PCR hearing that the January letter was inaccurate and that he did not have a relationship with Thomas Harrison, the victim in the Petitioner's other murder conviction. (Volume 6, pp. 2536-2537).  Culler testified that he did not grow up with Harrison, go to school with Harrison, or have meals with Harrison, nor could he recall ever having a case with him or ever socializing with him or his family. Culler further testified "I never sat down and had a personal conversation with him ...never rode in his car with him nor he in my car ...never strolled around anywhere together."  (Volume 6, pp. 2536, 2545).

Two months after having written this letter, Culler was appointed to represent the Petitioner on March 25, 1993, on the charge of murdering Robert Montgomery.  (Volume 6, p. 2534). Culler did not recall ever telling Petitioner that Harrison was a close friend or that he had written the letter now at issue. (Volume 6, pp. 2536-37).  Even more importantly, Culler testified that the letter was inaccurate and that he did not have any personal relationship with Harrison. (Volume 6, pp. 2536-37, 2546).  Culler testified that as a public defender, he knows a lot of officers and if he were in a relationship that went beyond professional, he would think it appropriate to bring that to the attention of the court and would also share it with the client. (Volume 6, pp. 2548-49). However, he stated that his relationship with Officer Harrison was a very tangential one and was not significant, and that he did not advise the trial judge about the letter or about any relationship with Harrison.  (Volume 6, pp. 2548-2549). He also stated that the relationship did not cause him to fail to pursue lines of investigation in his representation of the Petitioner and that instead he fought "pretty hard" on Petitioner's behalf.  (Volume 6, pp. 2548-50).



The PCR court evaluated the credibility of Culler's testimony concerning the nature of his relationship with Harrison and the inaccuracy of the letter, and found no conflict that would have required his recusal or that adversely affected counsel's performance.  (Volume 6, pp. 2808-2809).  See Wade v. State, 419 S.E.2d 781, 782 (S.C. 1992) ["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; Mickens 535 U.S. at 172, n. 5 ["An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance"].  While Culler stated that he did not know why he had tried to get out of the Perkins case; (Volume 6, pp. 2556); the PCR judge declared, "I condemn attorney Culler's actions in this case, but the weight of the testimony in my opinion was that because of laziness or because it was an unpopular case at the time [he] was just looking for an easy way out of his obligation as [sic] the Orangeburg Public defender and he wanted to give it (the Perkins case) to the private Bar . . . . There is no evidence in the record other than this letter asking to be disqualified that he had any connection whatsoever with Officer Harrison."  (Volume 6, p. 2808 n. 2).  The PCR court's findings are entitled to substantial deference on habeas corpus review under 28 U.S.C. Section 2254(e).

> A district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  But the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with state court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir. 2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]  In this case, the trial court's factual conclusion turned on credibility determinations. There were weaknesses in the testimony of witnesses on both sides, and the trial court's factual determination made clear that it credited [the testimony of certain witnesses.]

Guidry v. Dretke, 397 F.3d 306, 333-334 (5th Cir. 2005).

23



The PCR judge found Culler's testimony at the PCR hearing to be credible, and given the deference due the state court's finding on this credibility issue, the Petitioner has not shown that the state court's finding was unreasonable under § 2254(d); nor has Petitioner overcome the presumption accorded to the PCR court's findings. <u>Evans</u>, 220 F.3d at 312.   <u>See</u> <u>Seymour v. Walker</u>, 224 F.3d 542, 553 (6th Cir. 2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."];  <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court . . ."];  <u>Sumner v. Mata</u>, 455 U.S. 591, 597 (1982)[Factual findings of state court are presumed correct and given a high degree of deference since that court was in the best position to weigh the evidence and make determinations as to the credibility of witnesses];  <u>Mastracchio v. Vose</u>, 274 F.3d 590, 598 (1st Cir. 2001)["...federal habeas court ordinarily refrains from revisiting credibility determinations as 'it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review.'"](citation omitted);  <u>Church v. Sullivan</u>, 942 F.2d 1501, 1516 (10th Cir. 1991)["...we treat a state court finding regarding witness credibility as a finding of fact."];  <u>United States ex rel. Wandick v. Chrans</u>, 869 F.2d 1084, 1089 (7th Cir. 1989)[federal habeas court cannot redetermine credibility of witnesses if they have been observed in the state trial court.];  <u>Givens v. Yukins</u>, No. 98-2429, 2000 WL 1828484 at *10 (6th Cir. Dec. 5, 2000)[stating habeas courts cannot "redetermine witness credibility" observed solely by the state court.];  <u>Mickens</u> 535 U.S. at 172, n. 5 ["An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance"]. Therefore, this issue is without



merit and should be dismissed.

## IV.

In Ground Three of his Petition, Petitioner asserts that appellate counsel was ineffective for failing to raise, as a Confrontation Clause violation, the issue of the admission of the prior recorded testimony of Vincent Neumon after Neumon refused to testify during the sentencing phase of his trial. Respondent does not in his brief contest Petitioner's assertion that appellate counsel failed to raise this claim in the direct appeal of Petitioner's conviction.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant "the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.  However, at the time of Petitioner's trial under Ohio v. Roberts, 448 U.S. 561 (1980), this right did not bar admission of an unavailable witness's statement against a criminal defendant if the statement bore adequate "indicia of reliability." Ohio v. Roberts, 448 U.S. at 66. Further, the test of reliability could be met through a "firmly rooted hearsay exception". Id.  Under this rule,  before a declarant's hearsay testimony may be admitted, the Confrontation Clause requires the Government to show (1) that the use of the hearsay is necessary because the declarant is unavailable, and (2) that the hearsay bears indicia of reliability sufficient to enable the factfinder to evaluate the truth of the hearsay. United States v. McHan, 101 F.3d 1027, 1037 (4th Cir. 1996); Ohio v. Roberts, 448 U.S. at 65-66.

Subsequent to the trial of Petitioner's case, however, the Supreme Court refined its rule for analyzing challenges based on the Confrontation Clause  in Crawford v. Washington, 541 U.S. 36 (2004).  In Petitioner's APCR, Petitioner argued that his appellate counsel was ineffective by failing to anticipate the decision in Crawford, overruling Ohio v. Roberts, and raise a Confrontation Clause claim concerning the right to confront Neumon in his testimony at the

25



sentencing trial.  (Voume 6, pp. 2787-2788).  This issue was also raised on appeal in Petitioner's petition for certiorari before the South Carolina Supreme Court, and is therefore fully exhausted for purposes of federal court review.  See Petition for Writ of Certiorari, p. 1-2.

Following the PCR hearing, where Petitioner had the burden of proving the allegations in his petition; Butler v. State, 334 S.E.2d at 184; the PCR court made relevant findings of fact and conclusions of law on this issue in accordance with S.C. Code Ann. § 17-27-80 (1976), as amended, as follows: (1) that the Crawford decision and analysis did not apply retroactively on collateral review; (2) that Neumon testified in the guilt phase of Petitioner's trial that Petitioner had murdered Montgomery, but refused to testify as a state's witness during the penalty phase; (3) that Neumon also refused to testify as a court's witness during the penalty phase; (4) that the State requested that the court declare Neumon unavailable; (5) that the trial court denied Petitioner's motion for a mistrial; (6) that the prosecution asserted that it intended to present the testimony of Neumon about the earlier Harrison homicide, Petitioner's remarks to Neumon about the Kimberly Lee shooting in Alabama and Harrison, and the car theft in Georgia, that had not been previously presented in the trial; ( 7) that defense counsel opposed the court allowing Neumon's previous testimony to be read into the record, arguing that Neumon's testimony from the earlier [Harrison] trial would be devastating without defense counsel's ability to cross-examine him; (8) that during a break, Petitioner's counsel asked Neumon to testify for the defense and he refused; (9) that the trial court found the probative value of the prior testimony outweighed the prejudicial effect and that the prior testimony relating to matters that had not been presented would be allowed; (10) that the Solicitor and an Assistant Solicitor then reenacted portions of the State's questioning of Neumon at the Harrison trial; (11) that after the testimony was read, Petitioner's counsel moved to strike the



testimony on the grounds that the current defense team would have cross-examined Neumon differently than the original defense team and that defense counsel would also have objected to some of the questions; (12) that the trial judge denied the motion to strike, finding that the testimony met the requisites of State v. Riddle, 443 S.E.2d 557 (S.C. 1994) and State v. Anderson, 406 S.E.2d 152 ( S.C. 1991)[13]; (13) that the testimony had probative value; (14) that it dealt with issues including the escape in Alabama, the theft of the car in Georgia and other elements of the Harrison case that had not been heard; (15) that the mistrial motion was further rejected by the trial court where the prosecution had earlier advised the defense of all the testimony it intended to offer; (16) that there was no question that the accomplice's prior testimony about the events at issue in the penalty phase related to his actions leading up to the murders and car theft that uniquely showed Petitioner's character and role were probative and material; (17) that it would have been a miscarriage of justice had this testimony, taken under oath and subject to cross-examination, albeit by different counsel, not been presented; (18) that it would turn the element of prior cross-examination on its ear if it was limited to the same counsel; (19) that the State refused to vouch for Neumon after he refused to testify as required by a plea agreement, that he had escaped  and been a knowing actor and accomplice with Petitioner in a reign of crime in the Southeast, including being the only eyewitness to some; (20) that this issue was not preserved at trial or in any  of Petitioner's motions as a Confrontation Clause claim; (21) that therefore, appellate counsel cannot be faulted for failing to raise it as a Confrontation Clause issue since it was not preserved on that basis; (22) that since Petitioner had a prior opportunity in the Harrison trial and in fact did cross-examine Neumon both

---

[13]Riddle and Anderson held that a trial court may have previous sworn testimony of a witness who refuses to testify read to the jury under appropriate circumstances and where a failure to do so would likely result in a miscarriage of justice. Riddle, 443 S.E.2d at 561.



at this trial and in the prior trial, <u>Crawford</u> provided no solace for the Petitioner; and (22) that Petitioner's claim of appellate counsel error fails under both prongs of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). (Volume 6, pp. 2819-2828).

As previously discussed, substantial deference is to be given to the state court's findings of fact. <u>Evans</u>, 220 F.3d at 311-312; <u>Bell v. Jarvis</u>, <u>supra</u>. <u>See also</u> 28 U.S.C. § 2254(e)(1). <u>Fisher</u>, 215 F.3d at 446; <u>Frye</u>, 235 F.3d at 900. However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland</u>, 466 U.S. at 698; <u>Pruett v. Thompson</u>, 996 F.2d. 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, this Court's review remains limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>. <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must continue to be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes



"whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.[14]  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense.  In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996), cert. denied, 519 U.S. 1016 (1996). Here, after careful review of the record and the arguments presented, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that appellate counsel was ineffective under this standard.  Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

First, Respondent argues that this issue was not preserved as a challenge under the Confrontation Clause and, therefore, appellate counsel could not have even raised it  on direct appeal. State v. Hoffman, 440 S.E.2d 869, 873 (S.C. 1994)[An issue which is not properly preserved cannot be raised for the first time on appeal]. The record reflects that Petitioner's trial counsel did raise an objection relating to their inability to effectively cross-examine Neumon on relevant issues,

---

[14]While the claim here relates to appellate counsel, not trial counsel, the underlying standard for ineffective assistance remains the same. Mapes v. Tate, 388 F.3d 187, 191 (6th Cir. 2004) ["Appellate counsel's performance is judged under the same standard for evaluating trial counsel's performance found in Strickland v. Washington, ...."].



and although Petitioner's counsel did not cite to the Confrontation Clause or to <u>Ohio v. Roberts</u>, they did argue as to the availability of the witness and then objected on the basis that it would be devastating and prejudicial to the Petitioner for them not to be allowed to cross-examine Neumon. (Volume 4, p. 1811). After the trial court overruled counsel's objection and allowed the testimony to be read into the record, counsel moved to strike the testimony based on their inability to cross-examine the witness on that testimony or interpose any objections to the testimony. (Volume 4, pp. 1854-1855). The trial court again overruled the objection under <u>Riddle</u> and <u>Anderson</u>. (Volume 4, pp. 1859-1860).

        To preserve an issue for appeal the specific ground raised needs to be clear from the context of the objection or trial counsel must explain it with sufficient specificity that the trial court understands the basis of the objection. Rule 103(a)(1), SCRE. Here, although it was noted that Neumon had been subject to cross-examination at the earlier trial, Petitioner's counsel argued that *his* cross-examination *might* be a lot different than the previous cross-examination, and that they were looking "for a different approach to this case" . (Volume 4, pp. 1811-1812, 1858)[emphasis added]. However, the discussion centered around whether the recorded testimony was admissible under <u>Riddle</u>. Trial counsel did not specifically reference the Confrontation Clause or the <u>Ohio v. Roberts</u> decision in his arguments, and the PCR court found that trial counsel had therefore failed to preserve this issue as a federal constitutional Confrontation Clause Claim. (Volume 6, p. 2827).

        In South Carolina, a defendant's failure to raise an objection at trial constitutes a procedural default of his claim. <u>State v. Grovenstein</u>, 530 S.E.2d 406, 413 (S.C. 2000); <u>State v. Pauling</u>, 470 S.E.2d 106, 109 (S.C. 1996)["Having denied the trial judge an opportunity to cure any alleged error by failing to contemporaneously object . . ., Appellant is procedurally barred from



raising these issues for the first time on appeal."]; State v. Burton, 486 S.E.2d 762, 764 (S.C.Ct.App. 1997); see also Jackson v. Speed, 486 S.E.2d 750, 761 (S.C. 1997). Hence, if the state court's finding is correct, and this issue was not preserved at trial, the Respondent is correct in arguing that it could not have been raised by appellate counsel on appeal. State v. Hoffman, 440 S.E.2d at 873 [An issue which is not properly preserved cannot be raised for the first time on appeal]; see State v. Tucker, 462 S.E.2d 263, 265 (S.C. 1995); *cf.* Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) [Exhaustion requirement is technically met when a state procedural rule would bar consideration if the claim was later presented to the state court], cert. denied, 522 U.S. 833 (1997); see also Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert. denied, 528 U.S. 959 (1999)["In order to avoid procedural default [of a claim], the 'substance' of [the] claim must have been 'fairly presented' in state court. . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."](quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir. 1995)(quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994)).  Further, if procedurally defaulted, federal habeas review of this claim is barred unless Petitioner can demonstrate cause and prejudice, or actual innocence.  Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

31



Petitioner has not asserted or claimed any cause for a procedural default.   See 28 U.S.C. § 2254;  Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]. Rather, Petitioner argues that, although his trial counsel did not specifically refer to the Confrontation Clause at trial, the objection made was sufficient to preserve the issue. Cf. State v. Foster, 582 S.E.2d 426, 429, n.4 (S.C.Ct.App. 2003)[issue may be sufficiently preserved despite trial counsel's failure to specifically cite rule which formed the basis of objection]; State v. Cherry, 577 S.E.2d 719, 724 (S.C.Ct.App. 2001)[general objection was nevertheless sufficiently clear due to the context]; State v. McDonald, 540 S.E.2d 464, 465 (S.C. 2000)[context of objection made it sufficiently clear to be preserved for appellate review].  Petitioner further contends that his appellate counsel could have therefore raised this issue on appeal, and that it was ineffective assistance for appellate counsel to have failed to do so.  However, based on trial counsel's failure to specifically present this as a claim, the record in this case, and under the applicable caselaw, the state court's finding that this specific claim was not presented must be upheld. Joseph v. Angelone, 184 F.3d at 328: Sillick v. Ault, 358 F.Supp.2d 738, 765 (N.D.Iowa 2005)["The fair presentation component of the exhaustion requirement compels a petitioner to affirmatively refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."]

A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus petition have been properly raised in the prisoner's state court proceedings. Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir.1994) See also Duncan v. Henry, 513 U.S. 364 (1995)(per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoner's federal rights, they must surely be alerted to the fact the prisoners are asserting claims under the United States Constitution.... mere similarity of claims is insufficient to exhaust remedies); Keeney

32



> v. Tamayo-Reyes, 504 U.S. 1, 8 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

Sillick, 358 F.Supp.2d at 765-766.

Further, even assuming arguendo and for purposes of further discussion, that this issue *was* preserved as a Confrontation Clause challenge, the undersigned finds and concludes that Petitioner's claim is still subject to dismissal because he has not shown that his appellate counsel was deficient for failing to raise this issue in his direct appeal, or that he was prejudiced by appellate counsel's failure to raise this issue. First, the undersigned agrees with the state court that the Crawford Decision does not apply retroactively to cases decided and final prior to its issuance. Petitioner's conviction became final on January 11, 1999 when the United States Supreme Court denied certiorari. Ivey v. South Carolina, 525 U.S. 1075 (1999); see Capari v. Bohlen, 510 U.S. 383, 390 (1994)["A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."] After Petitioner's conviction had become final, the United States Supreme Court announced a new rule in Crawford for evaluating the reliability of testimonial statements, holding that "[t]he only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69. However, consistent with the state court finding here, the United States Supreme Court has itself now held that state courts are not required to apply Crawford retroactively. See Danforth v. Minnesota, ____ S.Ct. ____, 2008 WL 441059 (Feb. 20, 2008); Whorton v. Bockting, 549 U.S. ___, 127 S.Ct. 1177-1184 (2007). Therefore, since

33



Petitioner's conviction became final prior to the issuance of the decision in <u>Crawford</u>, the analysis in <u>Crawford</u> does not apply retroactively to his case.  Hence,   Petitioner has failed to show that appellate counsel was either deficient for failing to make this argument, or any prejudice.[15]

Additionally, appellate counsel testified at the PCR hearing that he was aware of the Confrontation Clause and the <u>Ohio v. Roberts</u> decision at the time he wrote his appellate brief, that he does not abandon a "winning issue" if he has one, and that the issues addressed in his brief were based on his review of the case and on what he thought had the greatest likelihood of success on the merits. (Volume 6, pp. 2660-2664).  No ineffective assistance is shown in this decision. <u>See</u> <u>McCoy v. Lynaugh</u>, 874 F.2d 954, 965 (5th Cir. 1989) ["<u>Strickland</u> does not require appellate counsel to raise every conceivable issue in order to be effective."]; <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989) [an appellate attorney is not required to raise every conceivable claim in order to provide effective assistance of counsel]. <i>Cf.</i>  <u>Harris v. Dugger</u>, 874 F.2d 756, 762 (11th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1011 (1989) [An informed decision by counsel should not be second guessed by a reviewing court.].

Further, the PCR court also found that appellate counsel was not ineffective on the merits of the issue itself; (Volume 6, pp. 2820-2828); and again the undersigned can find no reversible error in the state court's decision. Looking at the two prongs of <u>Ohio v. Roberts</u>, Petitioner first contends that the witness was available and in the courthouse, and argues that the PCR court erred because it failed to make any inquiry into the "unavailability" condition precedent of South Carolina Rules of Evid., 804(b)(1) [hearsay exception].  Petitioner argues that Neumon had

---

[15]It is also noted that the PCR judge found that, even if considered under <u>Crawford</u>, Petitioner's claim was still without merit. (Volume 6, pp. 2820-2828).



long since waived any Fifth Amendment privilege by testifying in the Harrison killing, and further argues that the state should have been required to call Neumon as a hostile witness.  <u>See</u> Petitioner's Reply Memorandum, p. 26, n. 9.  However, Petitioner's argument with respect to the trial court's witness  unavailable finding is without merit.

The record reflects that early representations were made that Neumon would refuse to testify in the guilt phase of Petitioner's trial relating to the death of Robert Montgomery, at which time the trial judge told the parties the issue would be dealt with when Neumon was called to testify. (Volume 1, pp. 8-9).  When Neumon was subsequently called to testify in the guilt phase by the State, the Solicitor asked Neumon during an in camera examination,

> Q.  Mr. Neumon, I want to make sure you understand that the questions I'm going to be asking you relate solely to the, what occurred with respect to the death of Robert Montgomery, the kidnapping, robbery and death of Mr. Montgomery, and we will not be talking about the Harrison case and we will not be talking about anything regarding the theft of the automobile in Atlanta, but strictly the events involving the night of January thirteenth and early morning of the fourteenth involving Montgomery, do you understand that?
>
> A.  Yes.

(Volume 3, p. 1406).

Neumon then proceeded to testify during the guilt phase of the trial, and was also cross-examined by defense counsel.  (Volume 3, pp. 1407-1444). However, when Neumon was again called as a witness in the penalty phase of Petitioner's trial, he refused to testify, asserting his privilege under the Fifth Amendment.  (Volume 4, pp. 1800-1804).  The State argued that Neumon had waived his Fifth Amendment privilege, but Neumon again refused to testify and invoked his Fifth Amendment privilege, with the trial court then finding that he had refused to cooperate as set out in his plea agreement.  (Volume 4, pp. 1804-1805).

35



The State then asked the trial court to call Neumon as a court's witness under <u>State v. Riddle</u>, <u>supra</u>, and <u>State v. Anderson</u>, <u>supra</u>, and that if Neumon continued to refuse to testify, the court declare him unavailable so that the State could introduce his sworn testimony from the Harrison trial.  (Volume 4, pp. 1805-1806).  Defense counsel objected and requested that the trial court declare a mistrial, which motion was denied.  (Volume 4, p. 1807).  The trial court then called Neumon, pursuant to <u>State v. Anderson</u>, as a court's witness.  (Volume 4, p. 1808).  After consulting with his attorneys (who were present in court at the time), Neumon again refused to testify, stating "I plead the Fifth."  (Volume 4, p. 1810).  The trial court, noting that Neumon had again refused to cooperate and comply with the terms of his plea agreement even after being called as a State's witness,  declared him to be unavailable.  (Volume 4, p. 1810).

After a break, defense counsel asked Neumon if he would testify as their witness. Neumon stated on the record that he would not testify as a witness for the defense and again asserted "the Fifth", continuing "I won't testify for anyone."  (Volume 4, pp. 1817-1818).  The trial court then inquired, "You won't testify at all?", and Petitioner responded, "No."  (Volume 4, p. 1818). The trial court then found,

> Even understanding, Mr. Neumon, that your failure to abide by this agreement and your refusal to testify for the State, your refusal to testify as the Court's called witness, and your refusal to testify for the defendant could result in a contempt citation for you, even facing that you refuse to testify?

(Volume 4, p. 1818).

Petitioner responded, "I refuse to testify."  The trial court then held Neumon in contempt for refusing to testify, but held the contempt citation in abeyance. (Volume 4, p. 1818). Neumon's testimony from the Harrison trial was then read into the record. (Volume 4, pp. 1825-1854).

"It is well established that a witness may be deemed 'unavailable' and use of his

36



former testimony permitted if the witness "'persists in refusing to testify ... despite an order of the court to do so.'" <u>Lowery v. Anderson</u>, 225 F.3d 833, 839-840 (7th Cir. 2000)(quoting Fed.R.Evid. 804(a)(2)). <u>See</u> <u>also California v. Green</u>, 399 U.S. 149, 168-69 (1970). Here, the trial court found that Neumon was unavailable after the prosecution made a good faith effort to obtain Neumon's testimony, in person, before the jury. Neumon refused to testify despite being called even as a court's witness. Based on the record before the court and the relevant caselaw, the Petitioner has failed to show that this finding of unavailability was unreasonable. Rule 804(a)(2), SCRE; <u>Ohio v. Roberts</u>, 448 U.S. at 74 [Witness is "unavailable" for purposes of the exception to the confrontation clause requirement when the prosecution has made a good faith effort to obtain his presence at trial]; <u>Lowery</u>, 225 F.3d at 839-840 [witness unavailable where he "persists in refusing to testify...despite an order of the court to do so"].

   With regard to the second prong of <u>Ohio v. Roberts</u>, Neumon's prior testimony bears indicia of reliability. <u>McHan</u>, 101 F.3d at 1037. Neumon's prior testimony was subject to cross examination by defense counsel, although Petitioner's counsel chose not to have any of the cross-examination read into the record. (Volume 4, p. 1812); <em>Cf.</em> <u>Crawford</u>, 541 U.S. at 59 ["Testimonial statements of witnesses absent from trial have been admitted...where the declarant is unavailable, and ...where the defendant has had a prior opportunity to cross-examine."]. While Petitioner argues that his counsel in his second trial would have cross-examined Neumon differently based on their strategies and specific facts in this case, the fact that different counsel represented Petitioner at the Montgomery trial does not provide a basis to not admit the prior testimony. <u>See</u> <u>Ohio v. Roberts</u>, 448 U.S. at 72. It is undisputed that Petitioner's previous trial counsel had an opportunity to cross-examine Neumon in the Harrison trial, and in both of these trials Petitioner was being tried for



murder and faced the death penalty, and in both cases the purpose or motive behind the cross-examination of Neumon during the sentencing phases was to attempt to persuade the jury not to sentence the Petitioner to death. See Rule 804(b)(1), SCRE; *cf.* United States v. Omar, 104 F.3d 519, 523-524 (1st Cir. 1997)[excluding testimony where motive was different in grand jury proceedings than at trial]. Counsel in the Montgomery trial also cross-examined Neumon in the penalty phase of that trial.   United States v. Richman, 600 F.2d 286, 299 (1st Cir. 1979)[Counsel's decision to restrict cross-examination of a witness was a trial tactic to which defendant was held].  Accordingly, even if his appellate counsel had raised this issue, Petitioner has not shown that he would have been entitled to relief on this ground.

Further, Petitioner has also failed to show that, even if his appellate counsel had raised this issue under the Confrontation Clause, the outcome would have been different. Mazzell, 88 F.3d at 269.  While Petitioner argues that Neumon made some conflicting statements regarding the Montgomery crime and about where Neumon was in Montgomery's car, the record reflects that Petitioner's trial counsel cross-examined Neumon during the guilt phase and attempted to point out inconsistencies in Neumon's testimony regarding the facts in the Montgomery case and to raise questions about his veracity. (Volume 3, pp. 1423-1434, 1440-1441).  Therefore, in addition to Petitioner's previous counsel having the opportunity to cross-examine Neumon, the jury had also heard Neumon's testimony from his current counsel's cross-examination in the guilt phase.  As for Neumon's testimony regarding the Harrison case and the theft of the automobile in Atlanta, Petitioner's counsel has not pointed to any specific differences or testimony which they would have allegedly attempted to bring out in cross-examination if Neumon had testified during the penalty phase.  Therefore, Petitioner has failed to show the necessary prejudice under Strickland.

38



In sum, Petitioner has failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable.  Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell v. Jarvis, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. This claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

March 21, 2008

